DISTRICT COURT OF THE VIRGIN ISLANDS
ST. CROIX DIVISION

| | |
|---|---|
| NORMA PICKARD SAMUEL, Individually and as a St. Thomas Candidate for Delegate to Congress, WILMA MARSH-MONSANTO, individually and as a St. Thomas candidate for Senate-at-Large, LAWRENCE OLIVE, individually and as a St. Thomas Candidate for the 30th Legislature, DIANE MAGRAS, Individually and as a St. Thomas candidate for Board of Elections, and HARRIET MERCER, individually and as a St. Thomas Candidate for Board of Elections, <br><br> Plaintiffs, <br><br> vs. <br><br> VIRGIN ISLANDS JOINT BOARD OF ELECTIONS, ST. CROIX BOARD OF ELECTIONS, ST. THOMAS-ST. JOHN BOARD OF ELECTIONS, JOHN ABRAMSON, Jr., as supervisor of Elections, RUPERT ROSS, JR., as chairman of the St. Croix Board of Elections, Alecia Wells, as chairwoman of the St. Thomas-St. John Board of Elections, <br><br> Defendants. | Civil No. 2012-0094 |

**Appearances:**

**Norma Pickard Samuel,** *Pro Se*
St. Thomas, U.S.V.I.

**Wilma Marsh-Monsanto,** *Pro Se*
St. Thomas, U.S.V.I.

**Lawrence Olive, Pro Se**
St. Thomas, U.S.V.I.

**Diane Magras,** *Pro Se*
St. Thomas, U.S.V.I.

**Harriet Mercer,** *Pro Se*
St. Thomas, U.S.V.I.

**Tamika M. Archer, Esq.**
**Ariel Smith-Francois, Esq.**
St. Thomas, U.S.V.I.
    *For the Defendants*

## MEMORANDUM OPINION

**Finch, J.**

THIS MATTER comes before the Court on Plaintiffs' "Application for a Temporary Restraining Order, Injunctive Relief, Mandamus Relief, Declaratory Judgment and Costs," filed on December 21, 2012. (Dkt. No. 33). Plaintiffs, proceeding *pro se*, have filed an action pursuant to 42 U.S.C. § 1983 in which they seek to decertify the November 6, 2012 general election in the Virgin Islands and enjoin the January 2013 swearing in of the Virgin Islands' officials elected at that time. They claim that Defendants have not addressed their election-related concerns and complaints, and have violated various federal and local laws which has cast the results of the election in doubt. On January 2, 2013, this Court issued an Amended Order denying Plaintiffs' petition for a temporary restraining order. (Dkt. No. 69).[1] Also on January 2, 2013, the Chief Judge of this District reassigned this case to the undersigned Judge for all further proceedings. (Dkt. No. 70). Defendants filed a "Brief in Response to January 2, 201[3], Court Order Scheduling a Preliminary Injunction Hearing" on January 4, 2013. (Dkt. No. 73). The Court held a hearing on Plaintiffs' petition for injunctive relief, mandamus relief, and declaratory judgment

---

[1] The Court originally issued an Order denying Plaintiffs' petition for a temporary restraining order on December 28, 2012 (Dkt. No. 50), and issued the Amended Order to correct an oversight in a footnote contained in the original Order. (Dkt. No. 69 n.1).

on January 4, 2013. During the hearing, the Defendants converted their brief into a Motion to Dismiss. For the reasons that follow, the Court denies Defendants' motion to dismiss and denies Plaintiffs' request for injunctive relief.

## BACKGROUND

### A. The Amended Complaint

As set forth in the Amended Complaint, Plaintiff Norma Pickard-Samuel was a federal candidate for the territory-wide position of Delegate to Congress in the November 2012 elections; Plaintiff Wilma Marsh-Monsanto was a candidate for the territory-wide position of Senator-at-Large; Plaintiff Lawrence Olive was a candidate for the St. Thomas District position as Senator for the 30th Legislature; and Plaintiffs Diane Magras and Harriet Mercer were candidates for the St. Thomas/St. John District Board of Elections. (Dkt. No. 33, ¶¶ 7-11). Plaintiffs were not elected. The Defendants include the Virgin Islands Joint Board of Elections, the St. Croix Board of Elections, the St. Thomas-St. John Board of Elections, as well as the following individuals, sued in their official capacities: John Abramson, Jr., Supervisor of Elections, Rupert Ross, Jr., Chairman of the St. Croix District and Joint Boards of Elections, and Alecia Wells, Chairwoman of the St. Thomas/St. John District Board of Elections. (*Id.*, ¶¶ 12-17).

Plaintiffs' twenty-one page Amended Complaint contains a number of general factual allegations that can be roughly divided into eight categories: (1) Defendants have ignored admonishments by the District Court and the Superior Court of the Virgin Islands contained in *Bryan v. Todman*, 1993 U.S Dist. LEXIS 21461 (D.V.I. Oct. 29, 1993) and *St. Thomas-St. John Bd. of Elections v. Daniel*, 2007 WL 4901116 (V.I. Sept. 17, 2007), *id.* ¶ 25; (2) Defendants have failed to enforce the Uniformed and Overseas Citizens Absentee Voting Act, amended by the

Military & Overseas Voter Empowerment Act, *id.* ¶ 26; (3) On occasions in 2001, 2003, and 2006, Defendant Abramson acted in a manner that has exposed or could expose the election system to compromise, *id.* ¶ 27; (4) Defendants have misrepresented the "true status of electronic voting machine certification" between 2010 and 2012 when, *inter alia*, Defendant Abramson stated that the Virgin Island voting machines were federally certified by the Election Assistance Commission ("EAC") when they were not, *id.* ¶ 28; (5) various individuals, including Plaintiff Marsh-Monsanto, made written requests for "election intervention and audit pertaining to the integrity and security of the Election System and Boards of Elections" from 2009 to 2012, *id.* ¶ 30; (6) Plaintiffs submitted correspondence to the Virgin Islands Attorney General and United States Attorney challenging the 2012 primary election process, which were neither officially acknowledged, acted upon "fully and impartially, nor resolved to the satisfaction of the plaintiffs," *id.* ¶¶ 31, 32; (7) between August and November 2012, "a number of candidates" and others submitted correspondence and inquiries to the Boards of Elections expressing serious concerns about the primary election; a person filed a complaint for a recount, which was granted but did not strictly conform to the statute; an unnamed person challenged the certification of the primary election; Plaintiff Pickard-Samuel submitted a letter to the Attorney General and U.S. Attorney concerning the use of non-EAC certified voting machines in the general election, in contravention of the Help America Vote Act of 2002 ("HAVA"), 116 Stat. 1666, 42 U.S.C. § 15301 *et seq.*, which she felt would negatively impact her election bid; a person challenged the Attorney General's announcement that his office would conduct an investigation into the 2012 general election, documenting a conflict of interest. According to Plaintiffs, all of this correspondence was ignored. *Id.* ¶¶ 33-44; and (8) Plaintiffs hand-delivered petitions for recount concerning the general election to the St. Thomas/St. John Elections Office "alleging a wide

variety of substantiated election-related complaints," including fraud, resulting in "the public's diminished trust and confidence in the Election System," and they believe they are entitled to a new election because Defendants failed to establish a quorum at the meeting where they decided the recount issue, as required by 18 V.I.C. §§ 629(b) and (c). *Id.* ¶¶ 45, 46.

Based on these allegations, Plaintiffs contend that Defendants have infringed on "voters' fundamental right to vote, fair and transparent elections and to equal protection"; they will be "severely burdened in exercising their due process right" to have their election challenges decided; and the legitimacy of the general election results, in terms of vote tabulation and certification are in doubt, as the tabulation is "independently unverifiable and indeterminable." *Id.* ¶¶ 48-50. They do not specifically explain how their constitutional rights have been violated.

Plaintiffs assert that Defendants, acting under color of law, have administered the election in a manner inconsistent with federal and local election law, violating 42 U.S.C. § 1983, and seek decertification of the general election and a new election. *Id.* ¶¶ 52-53. They request that Defendants be enjoined from conducting the January 8, 2013 swearing-in ceremony of all candidates.[2] They also request that the Court declare that: (1) Defendants' denial of petitions for recount by lack of quorum violates their due process rights; (2) Defendants have violated 18 V.I.C. §§ 629(b) and (c); (3) the 2012 general election is null and void, order the Boards of Elections to decertify the election, and issue an order to conduct the new election on a one-page paper ballot. *Id.* pp. 19-20.

---

[2] At the January 4, 2013 hearing, the Court learned that the Virgin Islands Delegate to Congress had already been sworn in; that the successful candidates for the Virgin Islands Legislature will be sworn in on January 14, 2013, the successful candidates for the St. Croix and St. Thomas-St. John Board of Elections will be sworn in on January 11, 2013, and the successful candidates for the St. Croix Board of Education will be sworn in on January 7, 2013.

### B. Defendants' Response

Defendants raise two arguments in their brief filed in response to the Court Order scheduling the preliminary injunction hearing. They make a number of contentions related to HAVA: (1) Plaintiffs have alleged no violation of HAVA because the statute does not provide for a private cause of action to be brought by individual plaintiffs; (2) no HAVA violation has been alleged which would give rise to subject matter jurisdiction by this Court since Plaintiffs have alleged that the non-EAC-certified voting machines violates HAVA; such certification of hardware is discretionary under HAVA; and Plaintiffs cannot establish a HAVA violation and the claim must be dismissed; and (3) the candidates for local office have no standing to bring a challenge under HAVA, which applies only to the election of individuals for federal offices. (Dkt. No. 73 at 4-7). Defendants also argue that Plaintiffs' claims are barred by the doctrine of laches because they had knowledge of the alleged election irregularities before the election, but waited until after the election to file a lawsuit—an approach that has been discouraged by the District Court of the Virgin Islands. *Id.* pp. 7-8 (citing cases).

### C. The January 4, 2013 Hearing

At the hearing, Plaintiffs made statements which reflected the concerns articulated in their Amended Complaint. They also called witnesses. The testimony focused on whether the voting machines had been EAC-certified, whether certain Defendants (Ross and Wells) had received and answered correspondence from Plaintiffs concerning various election matters, and if not, why not; testimony by two poll watchers about a 78-vote discrepancy at a St. Thomas polling station on election day, where they saw poll workers cross off names of people who voted from one book and put them in another book; and an admission by Defendant Wells that

the voting machines were not EAC certified—although she explained that the Attorney General had advised the Board of Elections that the machines could still be used.

Also at the hearing, Defendants converted their brief into a motion to dismiss. The Court permitted Plaintiffs to file a response to Defendants' motion by January 6, 2013.

## DISCUSSION

### A. Applicable Standards

#### 1. Standard for Preliminary Injunction

The Third Circuit has articulated the standard for granting a preliminary injunction pursuant to Fed. R. Civ. P. 65 as follows:

> To determine whether to grant a preliminary injunction, 'a district court must consider: (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest.'

*Iles v. de Jongh*, 638 F.3d 169, 172 (3d Cir. 2011) (quoting *McTernan v. City of New York*, 577 F.3d 521, 526 (3d Cir. 2009)). The party seeking relief must, "by a clear showing, carr[y] the burden of persuasion," *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam), on "each of the four prongs of the preliminary injunction standard." *United States v. Roach*, 947 F. Supp. 872, 877 (E.D. Pa. 1996). Injunctive relief is "'an extraordinary remedy' and 'should be granted only in limited circumstances.'" *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (quoting *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994)). "The purpose of a preliminary injunction is to preserve the status quo, not to decide the issues on their merits." *Anderson v. Davila*, 125 F.3d 148, 156 (3d Cir. 1997). The decision whether to grant a preliminary injunction is left to the sound discretion of the Court. *See Am. Exp. Travel Related Servs., Inc. v. Sidamon-Eristoff*, 669 F.3d 359, 366 (3d Cir. 2012).

### 2. Standard for Decertification of an Election

The standard for decertifying, or invalidating, an election in the Virgin Islands was articulated in *Bryan v. Todman*, 28 V.I. 42, 1992 V.I. Lexis 19 (Terr. Ct. Dec. 17, 1992), *aff'd* 1993 U.S. Dist. Lexis 21461 (D.V.I. Oct. 29, 1993). The court opined:

> No Court should invalidate an election and order a new one unless where there is a finding of fraud or deprivation of rights which would implicate the Constitution of the United States, unless there is a clear statutory provision requiring it, or unless violations of the statutory scheme were pervasive enough to affect or change the result of the election[.]Where irregularities are alleged, the burden of proof is on the plaintiff to show that the irregularities affect or change the result of the election by the questioned votes.

*Id.* at 45 (citations omitted). "Virgin Islands Courts deciding election challenges reflect that invalidating an election should be rare and for the most compelling reasons." *St. Thomas-St. John Board of Elections v. Daniel*, 2007 WL 4901116, at *21 (V.I. Sept. 17, 2007) (Swan, J., dissenting). Justice Swan went on to say that "[t]o invalidate an election, it must be proven by the complaining party that there was substantial non-compliance with election statutes regarding the ballot, and that this has resulted in reasonable doubt that the election reflected the will of the voters." *Id.* at *22 (citing *Beckstrom v. Volusia Cnty. Canvassing Board*, 101 So.2d 720, 725 (Fla. 1998)). "The Court must consider 'the extremely disruptive effect of election invalidation and the havoc it wreaks upon local political continuity.'" *Golden v. Gov't of the V.I.*, 2005 WL 6106401, at *5 (D.V.I. Mar. 1, 2005) (quoting *Soules v. Kauaians Nukolii Campaign Comm.*, 849 F.2d 1176, 1180 (9th Cir. 1988)).

### B. Subject Matter Jurisdiction

Defendants' theory that the Court lacks subject matter jurisdiction over Plaintiffs' Amended Complaint is predicated on alleged deficiencies in Plaintiffs' pleading related to HAVA, a federal statute that concerns federal not local elections. They assert that HAVA "does

not permit suit over claims that originate in state elections and that Plaintiffs' bare assertions of HAVA violations are without merit and dismissal of those claims is required." (Dkt. No. 73 at 6). They also allege that Plaintiffs, with the exception of Norma Pickard Samuel, lack standing under HAVA because HAVA applies only to the election of federal officials, not local officials. *Id.*

Defendants' arguments are misplaced. Plaintiffs § 1983 cause of action confers subject matter jurisdiction on this Court pursuant to 28 U.S.C. § 1331. *See Bond v. City of Bethlehem,* 2012 WL 5870870, at *1 (3d Cir. Nov. 21, 2012). Any alleged deficiency in a HAVA claim would not rob the Court of subject matter jurisdiction in this case.[3]

### C. Preliminary Injunction Analysis

#### 1. Initial Matters

As an initial matter, it is important to clarify what relief this Court has the potential to grant, and what relief it does not. Plaintiffs request both decertification of the November 2012 election and that Defendants be enjoined from conducting the January 2013 swearing-in ceremonies of all the candidates. In *Democratic Party of the Virgin Islands v. Bd. of Elections, St. Thomas-St. John,* 649 F. Supp. 1549 (D.V.I. 1986), the district court was asked to enjoin the

---

[3] In any event, Defendants point to nothing in the HAVA statute that defines a court's subject matter jurisdiction over questions related to it. *See United States v. Weatherspoon,* 696 F.3d 416, 421 (3d Cir. 2012) ("Indeed, as only Congress may define a court's subject-matter jurisdiction, 'limits on the reach of federal statutes, even nontemporal ones, are only jurisdictional if Congress says so: when Congress does not rank a statutory limitation as jurisdictional, courts should treat the restriction as nonjurisdictional in character.'") (quoting *Bowles v. Russell,* 551 U.S. 205, 127 S. Ct. 2360, 2368 (2007)). Instead, Defendants appear to contest whether Plaintiffs have stated a cognizable claim under HAVA by claiming that Plaintiffs' assertions of HAVA violations are without merit, requiring dismissal. They are not debating whether the Court has the jurisdiction to address causes of action under HAVA. Even a failure to allege statutory standing is analyzed in the context of failure to state a claim rather than lack of subject matter jurisdiction. *See In re Century Aluminum Co. Sec. Litig.,* __ F.3d __, 2013 WL 11887, at *4 (9th Cir. Jan. 2, 2013) ("Failure to allege statutory standing results in failure to state a claim on which relief can be granted, not the absence of subject matter jurisdiction.") (citing cases).

taking of the oath of office by any person elected to the Legislature. The Court declined to do so because "the Legislature is obviously not a party to this action, and . . . because we believe it would unnecessarily impinge upon the authority of the Legislature itself to direct its manner of organization." *Id.* at 1553. The Court cited Section 6(g) of the Revised Organic Act of 1954 as likely applying in that circumstance: "The legislature shall be the sole judge of the elections and qualifications of its members. . ." *Id.* at 1554. While *Democratic Party* did not cite the political question doctrine, this is precisely the kind of circumstance where that doctrine would apply: The decision concerning who is appropriately seated as a member of the Legislature is "demonstrably committed to a coordinate political department"—that of the legislative branch. *See Roudebush v. Hartke*, 405 U.S. 15, 19 (1972) ("Which candidate is entitled to be seated in the Senate is, to be sure, a nonjusticiable political question[.]"). Accordingly, this Court lacks jurisdiction to enjoin the swearing in of Legislative candidates.

Secondly, it is uncontested that the winning candidate for the Virgin Islands Delegate to Congress has already been sworn in. Therefore, even if this Court had jurisdiction to address a request for injunctive relief to prevent the swearing in of the Congressional candidate, it would be denied as moot.

### 2. Mandatory Injunction

The sole purpose of a preliminary injunction is to preserve the status quo pending a trial on the merits. The status quo is that the winners have been certified but have not yet been sworn in. Thus, preserving the status quo would entail enjoining the swearing in of the certified election winners. However, as indicated above, this Court has no jurisdiction to prevent the Legislature from swearing in the candidates who won the legislative election. The only possible relief the Court could provide, in that regard, would be to decertify the entire election—which would *not*

preserve the status quo. This defines a mandatory injunction. *See Black's Law Dictionary* (9th ed. 2009) (defining mandatory injunction as "[a]n injunction that orders an affirmative act or mandates a specified course of conduct."). If a party seeks a mandatory relief, "the burden on the moving party is particularly heavy." *Punnett v. Carter*, 621 F.2d 578, 582 (3d Cir. 1980). "Mandatory injunctions should be used sparingly." *United States v. Price*, 688 F.2d 204, 212 (3d Cir. 1982). Thus, Plaintiffs must satisfy an even higher burden to warrant the injunctive relief they seek.

### a. Likelihood of Success on the Merits

In their Amended Complaint, Plaintiffs alleged the deprivation of their Constitutional rights in the most general terms: "Plaintiffs believe defendants have infringed on voters' fundamental right to vote, fair and transparent elections and to equal protection." (Dkt. No. 33, ¶ 48); "Plaintiffs believe that. . . they and other candidates and voters, will continue to be disenfranchised or severely burdened in exercising their due process right to have their election concerns . . . acknowledged." (*Id.* ¶ 49); "The overall process suggests the Plaintiffs were denied, and continue to be denied, due process. . .") (*Id.* ¶ 50). They have also alleged that the denial of their petitions for recount violated 18 V.I.C. §§ 629(b) and (c) and therefore they were denied their due process rights. *Id.* p. 19.

The right to vote is a "fundamental political right." *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886). With regard to Plaintiffs' equal protection claim, the Supreme Court "has made clear that a citizen has a constitutionally protected right to participate in elections on an equal basis with other citizens in the jurisdiction." *Dunn v. Blumstein*, 405 U.S. 330, 336 (1972). Equal protection applies to the manner in which the franchise is exercised: "Having once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value

one person's vote over that of another." *Bush v. Gore*, 531 U.S. 98, 104-05 (2000) (citing *Harper v. Va. Bd. of Elections*, 383 U.S. 663, 665 (1966) ("[O]nce the franchise is granted to the electorate, lines may not be drawn which are inconsistent with the Equal Protection Clause of the Fourteenth Amendment."); *cf. Rodgers v. Johnson*, 174 F. App'x 3, 5 (3d Cir. 2006) (opining that, in order to state an equal protection claim, a plaintiff has to assert that "he is being treated differently than other similarly situated persons"); *Congregation Kol Ami v. Abington Twp.*, 309 F.3d 120 136-37 (3d Cir. 2002) (instructing that equal protection analysis requires establishing that plaintiff is similarly situated to other persons, and that there was no rational reason for the differential treatment of similarly situated persons).

Plaintiffs' Amended Complaint and the testimony offered at the hearing were bereft of any reference as to how they may have been treated differently than people who were similarly-situated to them in the context of voting—or in any other way. For example, they did not articulate how their right to vote was interfered with or impinged to such an extent that it amounted to a constitutional violation by not participating on an equal basis with other—unnamed—citizens, or how election officials treated them differently from other people. Accordingly, Plaintiffs have failed to show a likelihood of success on the merits of their Equal Protection Clause cause of action.[4]

Plaintiffs have alleged that their due process rights have been violated. "It is well established that the Due Process Clause contains both a procedural and substantive component." *Sidamon-Eristoff*, 669 F.3d at 366. To establish a procedural due process claim, "a plaintiff must

---

[4] In their Amended Complaint, Plaintiffs also referred to the Voting Rights Act of 1965, 42 U.S.C. § 1973j, as "prohibiting discrimination based on a potential voter's race, or on ethnic factors[.]" (Dkt. No. 33, ¶ 23). Plaintiffs have not alleged, however, that they have suffered any discrimination during the course of the election, nor did they present evidence in that regard at the hearing.

demonstrate that '(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property, and (2) the procedures available to him did not provide due process of law.'" *Iles*, 638 F.3d at 173 (quoting *Biliski v. Red Clay Consol. Sch. Dist. Bd. of Educ.*, 574 F.3d 214, 219 (3d Cir. 2009)). To establish a substantive due process claim, a plaintiff must establish that an election was "conducted in a manner that is fundamentally unfair." *Montgomery Cnty. v. Microvote Corp.*, 2000 WL 134708, at *4 n.3 (E.D. Pa. Feb. 3, 2000); *see also Gonzalez-Cancel v. Partido Nuevo Progresista*, 696 F.3d 115, 119 (1st Cir. 2012) (opining that a substantive due process violation occurs in context of an election where "'the election process reaches a point of patent and fundamental unfairness'" such as complete disenfranchisement of absentee and shut-in voters, or a municipality's decision not to hold an election at all) (citation omitted).

Plaintiffs allege, in general, that the November 2012 election suffered from certain irregularities—in particular, the fact that the voting machines were not EAC-certified. They conclude that the election was subverted by "fraud, corruption, and mistake" and contend that the public has "diminished trust and confidence in the Election System, its processes, instruments, officials, and vote outcomes." (Dkt. No. 33 at 16). While "[t]he right to vote—to the extent it exists and an individual has been deprived of it—is certainly a protected liberty interest," Plaintiffs have not alleged, nor did they proffer evidence at the hearing, that they were personally deprived of that right, or make any other representation that they suffered a constitutional deprivation of life, liberty or property. *Barefoot v. City of Wilmington, N.C.*, 37 F. App'x 626, 635 n.5 (4th Cir. 2002). The only deprivation they assert is a general lack of confidence in the election system, which simply does not rise to the level of a life, liberty, or property interest protected by the Fourteenth Amendment.

Plaintiffs contend that the procedures available to them—specifically the use of non-EAC certified voting machines in the primary and general elections, and general irregularities and violations of HAVA and local election laws—did not provide due process of law. At the hearing, they provided evidence of a discrepancy in one polling place, from the purview of two poll watchers, and Defendant Wells admitted that the voting machines were not EAC certified. Plaintiffs have alleged that the general election was "deliberate[ly] subvert[ted] by fraud, corruption, and mistake" which prompted their petition for recount. (Dkt. No. 33 at ¶ 45). This allegation, however, does not specify what fraud has taken place. They refer to alleged misrepresentation of the true status of the electronic voting machine certification over the course of the last two years (*id.* ¶ 28) and have questioned the validity of vote tabulation (*id.* ¶ 31). But none of these allegations rise to the level of widespread fraud—fundamental unfairness—requiring the invalidation of an election. Plaintiffs have not, for example, even alleged that voting machine irregularities were so pervasive that they affected the outcome of the election, or would have resulted in their election. *Daniel*, 2007 WL 4901116, at *21. Cases draw "[a] distinction . . . between 'garden variety' election irregularities and pervasive errors that undermine the integrity of the vote." *Bennett v. Yoshina*, 140 F.3d 1218, 1226 (9th Cir. 1998). "Garden variety election irregularities do not generally violate the Due Process Clause, even if they control the outcome of the vote or election." *Id.* Only when election irregularities transcend garden variety problems is the election invalid. *Id. See also Hennings v. Grafton*, 523 F.2d 861, 864 (7th Cir. 1975) (finding "no constitutional violation where irregularities were caused by mechanical or human error and were not due to invidious or fraudulent intent."). Plaintiffs have no constitutional right to have their election concerns and complaints, conveyed in various writings over the course of at least the last two years, "fully and impartially decided." In sum,

Plaintiffs have failed to show that they would succeed on the merits of their due process cause of action.

In addition, to the extent that Plaintiffs have alleged a § 1983 claim under HAVA, the Court finds that they would not succeed on the merits of such claim. In *Taylor v. Onorato*, 428 F. Supp. 2d 384 (W.D. Pa. 2006), the court addressed a § 1983 cause of action where plaintiffs alleged that defendants had violated HAVA and were seeking a preliminary injunction against the use of touch screen voting machines in an upcoming election. Plaintiffs contended that Defendants violated Section 301 of HAVA, which provides that "participating states must ensure that local voting jurisdictions have voting systems in place that comply with certain mandated features for all federal elections taking place after January 1, 2006. 42 U.S.C. § 15481." *Id.* at 386. This appears to be the same section of HAVA that Plaintiffs allege was violated. (Dkt. No. 33 ¶ 20). The *Onorato* Court found that HAVA

> does not provide a private right of action to enforce the mandates of section 301. Plaintiffs contend, however, that section 301 of the Act creates a federal right enforceable against state officials under 42 U.S.C. § 1983. In this regard, the Supreme Court decision in *Gonzaga University v. Doe,* 536 U.S. 273, 122 S. Ct. 2268, 153 L.Ed.2d 309 (2002), is controlling. There, the Supreme Court held that there is no private right of action to enforce this type of statute unless Congress, in a clear voice and unambiguously, confers a right to a private cause of action. *Id.* at 280, 122 S. Ct. 2268. Nowhere in section 301 or elsewhere in the Act, does Congress indicate an intention that section 301 may be enforced by private individuals.

*Id.* The court further explained that

> a private right of action will only be recognized for violations of federal rights not simply federal laws. Here, section 301 does not grant any private rights to an identifiable class of people. Rather, section 301 imposes an obligation on the states and local jurisdictions to put in place a voting system that meets certain criteria. The voters as a whole may benefit from the mandates of section 301. That is insufficient, however, to create a federal "right" as that term is defined by the Supreme Court.

*Id.* at 387. This Court agrees with the *Onorato* Court's analysis that there is no private remedy for a violation of Section 301 of HAVA. Consequently, Plaintiffs' § 1983 cause of action, to the extent it is based on a violation of HAVA, has no likelihood of success on the merits.

Finally, Plaintiffs have alleged violations of some local election laws. Specifically, they contend that Defendants did not report their correspondence and challenges regarding the 2012 primary and general election to the Attorney General's Office, as required under 18 V.I.C. § 47(8), (Dkt. No. 33, ¶ 32); and that Defendants failed to establish a quorum at a special meeting convened to discuss Plaintiffs' petitions and decide the recount issue, as required under 18 V.I.C. §§ 629(b) and (c). (*Id.* ¶ 46). They do not explain how Defendants' alleged violations of the provisions of 18 V.I.C. § 47(8), which concerns the Board of Election's duty to "investigate election frauds, irregularities and violations of this title, and report all suspicious circumstances to the Virgin Islands Department of Justice for possible prosecution", or 18 V.I.C. § 629(b) and (c), which concern the Board of Elections' procedures for a recount, violate their constitutional rights. *See Hennings,* 523 F.3d at 864 ("It is not every election irregularity, however, which will give rise to a constitutional claim and an action under section 1983. Mere violation of a state statute by an election official, for example, will not. *See Snowden v. Hughes*, 321 U.S. 1, 11 (1944))." *See also Moultrie v. S.C. Election Comm'n,* 2007 WL 445383, at * 7 (D.S.C. Feb. 6, 2007) (noting that what was alleged, at most, constituted a violation of state election laws, through non-enforcement, not a violation of federal law, and granting summary judgment to defendants); *Bryan,* 1993 U.S. Dist. Lexis 21461, at *16-17, 20 (commenting that "'election laws are, as a general rule, considered to be merely directory, even though mandatory in form'" and noting that even where actual irregularities existed and were numerous, if they were "not of a

character as to cast doubt upon the outcome of the vote, [they were] not sufficiently substantial to warrant nullification of the election.").

The Court concludes that Plaintiffs cannot meet their burden of demonstrating that they are likely to succeed on the merits of their Equal Protection and Due Process Clause claims, their HAVA claims, or any local law claims in their § 1983 case. Their "failure to show a likelihood of success on the merits 'must necessarily result in the denial of a preliminary injunction.'" *Sidamon-Eristoff*, 669 F.3d at 366 (quoting *In re Arthur Treacher's Franchisee Litig.*, 689 F.2d 1137, 1143 (3d Cir. 1982)).

### b. Irreparable Harm

Although the Court denies Plaintiff's petition for a preliminary injunction because they have not demonstrated a likelihood of success on the merits, it will briefly discuss the irreparable harm factor. Defendants assert, in passing, that "the election process may have been deliberately left open to compromise and vulnerabilities exploited, thus yielding disbelievable vote outcomes and irreparably harming plaintiffs. . ." (Dkt. No. 33, ¶ 50). This allegation of irreparable harm is based on systemic allegations of a compromised voting system, but Plaintiffs do not elucidate how *they* were irreparably harmed, or how such harm is imminent. See *Chester ex rel. NLRB v. Grane Healthcare Co.*, 666 F.3d 87, 89 (3d Cir. 2011) (observing that the threat of irreparable harm must be "imminent."). They do not allege, for example, that but for the operation of the voting machines or some miscounting of the votes, or but for the various responses or non-responses of Defendants to their concerns, they would have been elected, or they were otherwise injured, and why whatever their injury is would be addressed by decertifying the election results. See *Golden*, 2005 WL 6106401 at *3. At the hearing, they did not proffer any evidence that would tend to show that they would suffer immediate irreparable harm.

17

In addition, the timing of Plaintiffs' lawsuit deserves attention here. The Amended Complaint contains allegations that: (1) it was known since February 2011 that the voting machines were not certified by EAC (Dkt. No. 33, ¶ 28(d)); (2) problems with "voting machine testing . . . , confusing ballot design and prolonged counting of paper ballots" had been reported by a local newspaper as early as the 2012 primary election cycle, *id.* ¶ 29; and (3) certain Plaintiffs sent letters critical of voting machine testing and use in October and early November 2012, *id.* ¶¶ 39-42. However, Plaintiffs' original complaint was not filed until December 11, 2012, and the Amended Complaint, containing their application for a temporary restraining order and preliminary injunction, was not filed until December 21, 2012—after the election results were certified.

Preliminary injunctions are "generally granted under the theory that there is an urgent need for speedy action to protect the plaintiffs' rights. Delay in seeking enforcement of those rights, however, tends to indicate at least a reduced need for such drastic, speedy action." *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985). Plaintiffs did not explain why they waited until the eleventh hour to file their request for a TRO and preliminary injunction in which they seek to undo an election. The timing of their filing their lawsuit confirms that they will not suffer any irreparable harm. *See Soules*, 849 F.2d at, 1180 (taking equitable considerations such as laches into account in fashioning an appropriate remedy in a § 1983 elections case and noting that "the courts have been wary lest the granting of post-election relief encourage relief on the part of wily plaintiffs. As the Fourth Circuit put it, the 'failure to require pre-election adjudication would permit, if not encourage, parties who could raise a claim to lay by and gamble upon receiving a favorable decision of the electorate and then, upon losing, seek to undo

the ballot results in a court action.'") (quoting *Hendon v. N. C. State Bd. of Elections*, 710 F.2d 177, 182 (4th Cir. 1983)).

In sum, Plaintiffs have not met their burden of showing a likelihood of success on the merits, nor have they shown irreparable harm, to warrant this Court granting their petition for a preliminary injunction. Neither have they met their burden for a mandatory injunction. This is not the kind of case warranting an "extraordinary remedy." *Kos Pharms., Inc.*, 369 F.3d at 708. The Court will exercise its discretion and will deny Plaintiffs' petition for a preliminary injunction.

### D. Defendants' Motion to Dismiss

Defendants converted their "Brief in Response to January 2, 201[3], Court Order Scheduling a Preliminary Injunction Hearing" into a motion to dismiss. (Dkt. No. 73). In this filing, Defendants focused on Plaintiffs' HAVA claim; they did not address the constitutional issues associated with Plaintiffs' § 1983 cause of action. Accordingly, the Court denies Defendants' motion to dismiss.

### CONCLUSION

For the foregoing reasons, Plaintiff Motion for a Preliminary Injunction is denied. The Court also denies Defendants' motion to dismiss.

Date: January 6, 2013

/s/ RAYMOND L. FINCH
District Judge