**DISTRICT COURT OF THE VIRGIN ISLANDS**
**ST. CROIX DIVISION**

|  |  |  |
|---|---|---|
| NORMA PICKARD SAMUEL, Individually and as a St. Thomas Candidate for Delegate to Congress, WILMA MARSH-MONSANTO, individually and as a St. Thomas candidate for Senate-at-Large, LAWRENCE OLIVE, individually and as a St. Thomas Candidate for the 30th Legislature, DIANE MAGRAS, Individually and as a St. Thomas candidate for Board of Elections, and HARRIET MERCER, individually and as a St. Thomas Candidate for Board of Elections, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Civil No. 2012-0094 |
| VIRGIN ISLANDS JOINT BOARD OF ELECTIONS, ST. CROIX BOARD OF ELECTIONS, ST. THOMAS-ST. JOHN BOARD OF ELECTIONS, JOHN ABRAMSON, Jr., as supervisor of Elections, RUPERT ROSS, JR., as chairman of the St. Croix Board of Elections, Alecia Wells, as chairwoman of the St. Thomas-St. John Board of Elections, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

**Appearances:**

**Norma Pickard Samuel,** *Pro Se*
St. Thomas, U.S.V.I.

**Wilma Marsh-Monsanto,** *Pro Se*
St. Thomas, U.S.V.I.

**Lawrence Olive, Pro Se**
St. Thomas, U.S.V.I.

**Diane Magras,** *Pro Se*
St. Thomas, U.S.V.I.

**Harriet Mercer,** *Pro Se*
St. Thomas, U.S.V.I.

**Tamika M. Archer, Esq.**
**Ariel Smith-Francois, Esq.**
St. Thomas, U.S.V.I.
    *For the Defendants*

## MEMORANDUM OPINION

**Finch, Senior Judge**

THIS MATTER comes before the Court on Defendants' Motion to Dismiss, filed on January 18, 2013. (Dkt. No. 84). In their motion, Defendants argue that this case should be dismissed on numerous grounds, including lack of standing, failure to state a claim, and laches. Plaintiffs, proceeding *pro se*, have opposed the motion. (Dkt. No. 86). For the reasons that follow, the Court grants Defendants' motion and dismisses the Amended Complaint.

## BACKGROUND

On December 11, 2012, Plaintiffs Norma Pickard-Samuel, Wilma Marsh-Monsanto, Lawrence Olive, Diane Magras, and Harriet Mercer filed a Complaint pursuant to 42 U.S.C. § 1983 and other statutes in which they sought, *inter alia*, to decertify the November 6, 2012 general election in the Virgin Islands. (Dkt. No. 1). They filed an Amended Complaint on December 21, 2012, which also contained an "Application for a Temporary Restraining Order, Injunctive Relief, Mandamus Relief, Declaratory Judgment and Costs." (Dkt. No. 33).

As set forth in the Amended Complaint, Plaintiff Norma Pickard-Samuel was a federal candidate for the territory-wide position of Delegate to Congress in the November 2012 elections; Plaintiff Wilma Marsh-Monsanto was a candidate for the territory-wide position of

2

Senator-at-Large; Plaintiff Lawrence Olive was a candidate for the St. Thomas District position as Senator for the 30th Legislature; and Plaintiffs Diane Magras and Harriet Mercer were candidates for the St. Thomas/St. John District Board of Elections. (Dkt. No. 33, ¶¶ 7-11). Plaintiffs were not elected in the November 2012 election. Plaintiffs claimed that Defendants—the Virgin Islands Joint Board of Elections; the St. Croix Board of Elections; the St. Thomas-St. John Board of Elections; John Abramson, Jr., Supervisor of Elections; Rupert Ross, Jr., Chairman of the St. Croix Board of Elections; and Alecia Wells, Chairwoman of the St. Thomas-St. John Board of Elections—have not addressed their election-related concerns and complaints, and had violated various federal and local laws which cast the results of the election in doubt. Plaintiffs also sought a temporary restraining order and a preliminary injunction to enjoin the January 2013 swearing in of the Virgin Islands' officials elected in November 2012.

The procedural background in this case was set forth in the Court's January 6, 2013 Memorandum Opinion denying a preliminary injunction:

> Plaintiffs' twenty-one page Amended Complaint contains a number of general factual allegations that can be roughly divided into eight categories: (1) Defendants have ignored admonishments by the District Court and the Superior Court of the Virgin Islands contained in *Bryan v. Todman*, 1993 U.S Dist. LEXIS 21461 (D.V.I. Oct. 29, 1993) and *St. Thomas-St. John Bd. of Elections v. Daniel*, 2007 WL 4901116 (V.I. Sept. 17, 2007), [Dkt. No. 33] ¶ 25; (2) Defendants have failed to enforce the Uniformed and Overseas Citizens Absentee Voting Act, amended by the Military & Overseas Voter Empowerment Act, *id.* ¶ 26; (3) On occasions in 2001, 2003, and 2006, Defendant Abramson acted in a manner that has exposed or could expose the election system to compromise, *id.* ¶ 27; (4) Defendants have misrepresented the "true status of electronic voting machine certification" between 2010 and 2012 when, *inter alia*, Defendant Abramson stated that the Virgin Island voting machines were federally certified by the Election Assistance Commission ("EAC") when they were not, *id.* ¶ 28; (5) various individuals, including Plaintiff Marsh-Monsanto, made written requests for "election intervention and audit pertaining to the integrity and security of the Election System and Boards of Elections" from 2009 to 2012, *id.* ¶ 30; (6) Plaintiffs submitted correspondence to the Virgin Islands Attorney General and United States Attorney challenging the 2012 primary election process, which were neither officially acknowledged, acted upon "fully and impartially, nor

resolved to the satisfaction of the plaintiffs," *id.* ¶¶ 31, 32; (7) between August and November 2012, "a number of candidates" and others submitted correspondence and inquiries to the Boards of Elections expressing serious concerns about the primary election; a person filed a complaint for a recount, which was granted but did not strictly conform to the statute; an unnamed person challenged the certification of the primary election; Plaintiff Pickard-Samuel submitted a letter to the Attorney General and U.S. Attorney concerning the use of non-EAC certified voting machines in the general election, in contravention of the Help America Vote Act of 2002 ("HAVA"), 116 Stat. 1666, 42 U.S.C. § 15301 *et seq.*, which she felt would negatively impact her election bid; a person challenged the Attorney General's announcement that his office would conduct an investigation into the 2012 general election, documenting a conflict of interest. According to Plaintiffs, all of this correspondence was ignored. *Id.* ¶¶ 33-44; and (8) Plaintiffs hand-delivered petitions for recount concerning the general election to the St. Thomas/St. John Elections Office "alleging a wide variety of substantiated election-related complaints," including fraud, resulting in "the public's diminished trust and confidence in the Election System," and they believe they are entitled to a new election because Defendants failed to establish a quorum at the meeting where they decided the recount issue, as required by 18 V.I.C. §§ 629(b) and (c). *Id.* ¶¶ 45, 46.

Based on these allegations, Plaintiffs contend that Defendants have infringed on "voters' fundamental right to vote, fair and transparent elections and to equal protection"; they will be "severely burdened in exercising their due process right" to have their election challenges decided; and the legitimacy of the general election results, in terms of vote tabulation and certification are in doubt, as the tabulation is "independently unverifiable and indeterminable." *Id.* ¶¶ 48-50. They do not specifically explain how their constitutional rights have been violated.

Plaintiffs assert that Defendants, acting under color of law, have administered the election in a manner inconsistent with federal and local election law, violating 42 U.S.C. § 1983, and seek decertification of the general election and a new election. *Id.* ¶¶ 52-53. They request that Defendants be enjoined from conducting the January 8, 2013 swearing-in ceremony of all candidates. They also request that the Court declare that: (1) Defendants' denial of petitions for recount by lack of quorum violates their due process rights; (2) Defendants have violated 18 V.I.C. §§ 629(b) and (c); (3) the 2012 general election is null and void, order the Boards of Elections to decertify the election, and issue an order to conduct the new election on a one-page paper ballot. *Id.* pp. 19-20.

*Samuel v. Virgin Islands Joint Bd. of Elections*, 2013 WL 106686, at *2 (Jan. 6, 2013) (footnote omitted).

The Court issued an Amended Order denying Plaintiffs' petition for a temporary restraining order on January 2, 2013 (Dkt. No. 69), and later denied Plaintiff's motion for reconsideration of that Order. (Dkt. No. 83). On January 4, 2013, the Court held a hearing on Plaintiffs' motion for a preliminary injunction, and denied the motion in a Memorandum Opinion issued on January 6, 2013. (Dkt. No. 76). Plaintiffs filed a "Motion to Reconsider and Alter Judgment" on January 11, 2013, in which they asked the Court to reconsider its denial of their request for a preliminary injunction. (Dkt. No. 81). The Court denied that motion on February 1, 2013. (Dkt. No. 87). On February 4, 2013, the Court denied Plaintiffs' motion to stay proceedings in this case while the motion to reconsider the denial of the preliminary injunction was pending. (Dkt. No. 88).

On January 18, 2013, Defendants filed the instant Motion to Dismiss. (Dkt. No. 84, 85). Plaintiffs opposed the motion (Dkt. No. 86), and Defendants filed a reply brief. (Dkt. No. 89). The matter is now ripe for disposition.

## DISCUSSION

### A. Standard of Review

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny,* 515 F.3d 224, 231 (3d Cir.2008) (quoting *Pinker v. Roche Holdings Ltd.,* 292 F.3d 361, 374 n.7 (3d Cir. 2002)). To withstand a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "After *Iqbal*, it is clear that conclusory or

'bare-bones' allegations will no longer survive a motion to dismiss: 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1949)). Therefore,

> after *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [*Iqbal*, 129 S. Ct. at 1949]. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Phillips [v. Cnty. of Allegheny],* 515 F.3d 224, 234-35 [3d Cir. 2008].

*Id.* at 210-211. In adjudicating a motion to dismiss, the Court may consider certain narrowly-defined types of materials without converting the motion to a summary judgment motion, including items that are integral to or explicitly relied on in the complaint." *Rockefeller Ctr. Properties, Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999).

### B. Standing: The § 1983 Causes of Action

Defendants contend that Plaintiffs lack standing to bring this case because Plaintiffs have not alleged any facts that would tend to establish that they suffered a concrete or actual injury caused by Defendants' actions that can be redressed in this action. According to Defendants, because Plaintiffs' injuries are at best conjectural, and they claim no particularized harm to themselves, they do not have standing that would allow this Court to exercise jurisdiction over Plaintiffs' claims. (Dkt. No. 85 at 7-8). Plaintiffs have not addressed the standing issue regarding their § 1983 cause of action in their opposition to the motion to dismiss. Because standing implicates the Court's subject matter jurisdiction over a case, the Court will address this issue first. *See Adams v. Ford Motor Co.*, 653 F.3d 299, 304 (3d Cir. 2011) ("As in all cases, we must

first address the issue of standing because '[i]f plaintiffs do not possess Article III standing, . . . the District Court . . . lack[s] subject matter jurisdiction to address the merits of plaintiff's case.'") (quoting *ACLU-NJ v. Twp. of Wall*, 246 F.3d 258, 261 (3d Cir. 2001)).[1]

Article III of the Constitution limits federal courts' jurisdiction to "Cases" and "Controversies." As the Supreme Court has explained, "[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *DaimlerChrysler Corp. v. Cuno,* 547 U.S. 332, 341 (2006) (internal quotation marks omitted). "One element of the case-or-controversy requirement" is that plaintiffs "must establish that they have standing to sue." *Raines v. Byrd,* 521 U.S. 811, 818 (1997). "The 'irreducible constitutional minimum' of Article III standing consists of three elements." *Toll Bros., Inc. v. Twp. of Readington,* 555 F.3d 131, 137 (3d Cir. 2009) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "First, the plaintiff must have suffered a 'concrete,' 'particularized' injury-in-fact, which must be 'actual or imminent, not conjectural or hypothetical.' Second, that injury must be 'fairly traceable to the challenged action of the defendant.' Third, the plaintiff must establish that a favorable decision likely would redress the injury." *Id.* at 137-38 (citations omitted). While "all three of these elements are constitutionally mandated, the injury-in-fact element is often determinative. Under it, the plaintiff must suffer a palpable and distinct harm. That harm must affect the plaintiff in a personal and individual way." *Id.* at 138 (citations and internal quotation marks omitted). In addition, even though the "injury can be widely shared," it must "nonetheless be concrete enough

---

[1] "A motion to dismiss for want of standing is . . . properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007).

7

to distinguish the interest of the plaintiff from the generalized and undifferentiated interest every citizen has in good government." *Id.*

The Court has parsed Plaintiffs' Amended Complaint for allegations of injury they alleged they have suffered. In addition to allegations that Defendants have "consistently misrepresented and misle[]d the true status of electronic voting machine certification" (Dkt. No. 33, ¶ 28), and that Defendants did not respond to, or did not fully act upon, Plaintiffs' concerns about the validity of vote tabulation and election certification (*id.*, ¶¶ 31-40), the focus of Plaintiffs' allegations of injury (stated in the context of irreparable harm) is that

> Plaintiffs believe defendants have infringed on voters' fundamental right to vote, fair and transparent elections and to equal protection. It is anticipated that voters or other candidates will be similarly aggrieved by defendants' actions in the future absent injunctive relief. The aggrieved plaintiffs have standing in their individual capacity, but neither the claims asserted nor the relief requested herein requires the participation of the Plaintiffs to vindicate their individual rights. The actual and threatened injuries suffered by the plaintiffs have been and will continue to be suffered by thousands of Virgin Island citizens absent injunctive relief.
>
> Plaintiffs believe[] that, absent injunctive relief, they and other candidates and voters will continue to be disenfranchised or severely burdened in exercising their due process right to have their election concerns, complaints and challenges lawfully acknowledged, vetted, and fully and impartially decided due to the collusionary practices, derelict and negligent misconduct of oath-sworn government and elected officials.
>
> The outcome of the vote tabulation is independently unverifiable and indeterminable as an accurate metric that reflects the will of the voter. The overall process suggests the Plaintiffs were denied, and continue to be denied, due process, and the election process may have been deliberately left open to compromise and vulnerabilities exploited, thus yielding disbelievable vote outcomes and irreparably harming plaintiffs, voters and future candidates of the U.S. Virgin Islands through coercion and disenfranchisement.

(*Id.*, ¶¶ 48-50).

In its Memorandum Opinion denying Plaintiffs' request for a preliminary injunction, the Court considered whether Plaintiffs suffered irreparable harm (*i.e.*, injury). The Court wrote that Plaintiffs'

> allegation of irreparable harm is based on systemic allegations of a compromised voting system, but Plaintiffs do not elucidate how *they* were irreparably harmed, or how such harm is imminent. *See Chester ex rel. NLRB v. Grane Healthcare Co.*, 666 F.3d 87, 89 (3d Cir. 2011) (observing that the threat of irreparable harm must be "imminent."). They do not allege, for example, that but for the operation of the voting machines or some miscounting of the votes, or but for the various responses or non-responses of Defendants to their concerns, they would have been elected, or they were otherwise injured, and why whatever their injury is would be addressed by decertifying the election results. *See Golden*, 2005 WL 6106401 at *3.

*Samuel*, 2013 WL 106686, at *8. This reasoning applies to the issue of standing as well, as Plaintiffs must show that they have suffered injury-in-fact. They have not done so with regard to their 42 U.S.C. § 1983 due process and equal protection claims.

As indicated above, an injury for standing purposes may be widely shared; however, it must "nonetheless be concrete enough to distinguish the interest of the plaintiff from the generalized and undifferentiated interest every citizen has in good government." *Toll Bros., Inc.*, 555 F.3d at 138. Plaintiffs' allegations do not distinguish their concerns—about the use of certain voting machines in the election or the election results in general—from concerns of other voters or even other candidates. In fact, they make a point that their injuries are completely aligned with local voters when they allege that "[t]he actual and threatened injuries suffered by the plaintiffs have been and will continue to be suffered by thousands of Virgin Island citizens absent injunctive relief." (Dkt. No. 33 at ¶ 50); *see also id.* (the election results will "harm[] plaintiffs, voters and future candidates of the U.S. Virgin Islands through coercion and disenfranchisement."); (*id.,* ¶ 48) ("[N]either the claims asserted nor the relief requested herein requires the participation of the Plaintiffs to vindicate their individual rights."). At best, Plaintiffs

allege "a type of institutional injury"—use of improper voting machines—"which necessarily damages" all Virgin Islands voters "equally." *Raines*, 521 U.S. at 821; *see also Lujan*, 504 U.S. at 573-74 (explaining that the Supreme Court has "consistently held that a plaintiff . . . seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy.").

Moreover, Plaintiffs "do not claim that they have been deprived of something to which they personally are entitled"—such as election to the various positions they sought. They do not claim a loss of "any private right, which would make the injury more concrete." *Id.* The injuries about which Plaintiffs complain are phrased conjecturally: Plaintiffs "believe" they and Virgin Islands voters have suffered injury or that the election process "may have been" left open to compromise (Dkt. No. 33, ¶¶ 48-50); they are phrased generally, as amorphous due process claims, without requisite concreteness; and they are phrased as ongoing claims that will harm voters in the future, without the requisite imminence. Although Plaintiffs "believe" Defendants have infringed on "voters' fundamental right to vote, fair and transparent elections and to equal protection," (Dkt. No. 33 at 17), these are conclusory allegations without factual support. For example, Plaintiffs do not explain what actually occurred during the November 2012 election that would show that the results did not reflect the will of the voters, how those vague injuries took place, or how a failure to use EAC-certified machines may have caused such injuries.

In short, Plaintiffs have not alleged how their due process or equal protection rights were violated by Defendants' actions. As a result, they have "not alleged a sufficiently personal injury to establish standing[.]" *Lavergne v. Bryson*, 2012 WL 4127268, at *2 (3d Cir. Sept. 20, 2012) (citing *Schaffer v. Clinton,* 240 F.3d 878, 885 (10th Cir. 2001)). Accordingly, Plaintiffs' 42

U.S.C. § 1983 claims must be dismissed on standing grounds for failure to allege an injury-in-fact.[2]

---

[2] Even if Plaintiffs had established standing under § 1983 for their equal protection and due process claims, the Court would dismiss that cause of action for failure to state a claim. In order to state an equal protection claim, Plaintiffs must establish that they are similarly situated to other persons, and that there was no rational reason for the differential treatment of similarly situated persons. *Congregation Kol Ami v. Abington Twp.,* 309 F.3d 120, 136-37 (3d Cir. 2002). The Amended Complaint is bereft of any reference that Plaintiffs may have been treated differently than people who were similarly-situated. For example, Plaintiffs did not articulate how their right to vote was interfered with or impinged to such an extent that it amounted to a constitutional violation by not participating on an equal basis with other—unnamed—citizens, or how election officials treated them differently from other people.

In terms of Plaintiffs' due process allegations, "[i]t is well established that the Due Process Clause contains both a procedural and substantive component." *Am. Express Travel Related Servs., Inc. v. Sidamon-Eristoff*, 669 F.3d 359, 366 (3d Cir. 2012). To establish a procedural due process claim, "a plaintiff must demonstrate that '(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property, and (2) the procedures available to him did not provide due process of law.'" *Iles v. de Jongh*, 638 F.3d 169, 173 (3d Cir. 2011) (quoting *Biliski v. Red Clay Consol. Sch. Dist. Bd. of Educ.*, 574 F.3d 214, 219 (3d Cir. 2009)). To establish a substantive due process claim, a plaintiff must establish that an election was "conducted in a manner that is fundamentally unfair." *Montgomery Cnty. v. Microvote Corp.*, 2000 WL 134708, at *4 n.3 (E.D. Pa. Feb. 3, 2000). Plaintiffs allege, in general, that the November 2012 election suffered from certain irregularities—in particular, the fact that the voting machines were not EAC-certified, that the election was subverted by "fraud, corruption, and mistake," and that the public has "diminished trust and confidence in the Election System, its processes, instruments, officials, and vote outcomes." (Dkt. No. 33 at 16). None of these allegations rise to the level of widespread fraud—fundamental unfairness—establishing a substantive due process claim and requiring the invalidation of the election. Plaintiffs have not alleged, for example, that the voting machine irregularities were so pervasive that they affected the outcome of the election. As far as procedural due process, while "[t]he right to vote—to the extent it exists and an individual has been deprived of it—is certainly a protected liberty interest," Plaintiffs have not alleged that they were personally deprived of that right, or make any other representation that they suffered a constitutional deprivation of life, liberty or property. *Barefoot v. City of Wilmington, N.C.*, 37 F. App'x 626, 635 n.5 (4th Cir. 2002). The only deprivation they assert is a general lack of confidence in the election system, which simply does not rise to the level of a life, liberty, or property interest protected by the Fourteenth Amendment. They also have no constitutional right to have their election concerns and complaints, conveyed in various writings over the years, fully and impartially decided. In sum, Plaintiffs have not stated a claim under § 1983.

## C. Whether Plaintiffs Have Stated a Claim Under the Help America Vote Act (HAVA)

Plaintiffs' claims fail on other grounds as well. It is well-established that "'a plaintiff must demonstrate standing for each claim he seeks to press' and 'for each form of relief that is sought.'" *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (quoting *DaimlerChrysler Corp.*, 547 U.S. at 352)). Defendants contest whether Plaintiffs have stated a cognizable claim under the Help America Vote Act of 2002 ("HAVA"), Pub. L. 107-252, 116 Stat. 1666, 42 U.S.C. §§ 15301-15545, because HAVA does not permit Plaintiffs to file a private cause of action. A failure to allege statutory standing is analyzed in the context of failure to state a claim rather than lack of subject matter jurisdiction. *See In re Century Aluminum Co. Sec. Litig.*, __ F.3d __, 2013 WL 11887, at *4 (9th Cir. Jan. 2, 2013) ("Failure to allege statutory standing results in failure to state a claim on which relief can be granted, not the absence of subject matter jurisdiction.") (citing cases).

Plaintiffs' HAVA-related allegations are found in paragraphs 18, 20, 21, and 41 of the Amended Complaint. Plaintiffs allege that Defendants are required to act in accordance with HAVA concerning the conduct of "elections containing a federal candidate on the ballot"; that HAVA requires jurisdictions that use paper ballot voting systems, punch card voting systems, or a central count voting system to provide, *inter alia*, voter education on how to use the systems and a record that can be audited; Virgin Islands law mandates only EAC-certified voting machines, as required by HAVA, to be used in general and special elections; and Plaintiff Samuel expressed her concerns in a November 2011 letter to the Virgin Islands Attorney General and United States Attorney that non-EAC voting machines would be used in the 2012 general election, in contravention of HAVA. (Dkt. No. 33, ¶¶ 18, 20, 21, 41).

Defendants are correct that Plaintiffs, to the extent that they are seeking to state a claim against Defendants under HAVA, either directly or under § 1983, may not do so because the HAVA provisions that they cite do not permit individual plaintiffs to enforce those provisions by bringing a private cause of action. Plaintiffs refer to two different sections of HAVA. Section 301, 42 U.S.C. § 15481, provides for, *inter alia*, voter education and ability to audit the voting system in use. (Amended Complaint ¶ 20). The HAVA provision that refers to certification of voting machines, 42 U.S.C. § 15371(a)(2), provides that, "[a]t the *option* of a State, the State may provide for the testing, certification, decertification, or recertification of its voting system hardware and software by the laboratories accredited by the Commission under this section." (emphasis added).

In *Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002), the Supreme Court held that there is no private right to enforce a statute unless Congress, in a clear voice, unambiguously confers that right. *Id.* at 280. Nowhere in Section 15371 or Section 15481 has Congress indicated an intention that these provisions may be enforced by private individuals. This result is consistent with other circuit and district courts that have found no private right of action under particular sections of HAVA. *See Sandusky Cnty. Democratic Party v. Blackwell*, 387 F.3d 565, 572 (6th Cir. 2004) ("HAVA does not itself create a private right of action."); *Crowley v. Nev. ex rel. Nev. Sec'y of State*, 678 F.3d 730, 731 (9th Cir. 2012) ("Because HAVA § 301 was not intended to benefit voters and candidates in local elections . . . such individuals do not have a private right of action under § 1983."); *Taylor v. Onorato*, 428 F. Supp. 2d 384, 387 (W.D. Pa. 2006) (finding that

HAVA did not provide a private right of action to enforce § 301, nor did it create a federal right enforceable against state officials under 42 U.S.C. § 1983).[3]

Even if Plaintiffs could bring an action under HAVA directly or pursuant to § 1983, HAVA's provision concerning EAC-certified voting machines, 42 U.S.C. § 15371(a)(2) is permissive, not mandatory. Section 15371 imposes no requirement on Defendants to use EAC-certified machines. Although Plaintiffs assert that Defendants administered the election in a manner inconsistent with HAVA, *id.* ¶ 53, this allegation has no traction because HAVA does not require Defendants to use EAC-certified voting machines and thus there would be nothing to enforce. As a consequence, Defendants cannot be found to have administered the election in violation of HAVA.

Accordingly, to the extent Plaintiffs have alleged a cause of action under HAVA, either directly or under § 1983, they have failed to state a claim and such a cause of action must be dismissed.

---

[3] In Plaintiffs' Brief in Opposition to the Motion to Dismiss, they refer to *United States v. New York State Bd. of Elections*, a case filed in the Northern District of New York in 2006 which set forth "a variety of allegations identical in many respects to Plaintiffs' present cause of action, thereby invoking subject matter jurisdiction of the Court, and ultimately obtaining an Order from the Court compelling the Defendants to 'take all necessary actions to come into compliance with the requirements of Section 301 and 303(a) of HAVA as soon as practicable[.]'" (Dkt. No. 86 at 5). Plaintiffs apparently argue that the New York case demonstrates that a court has subject matter jurisdiction over a HAVA cause of action and, by implication, that this Court has jurisdiction over their HAVA cause of action. However, there is a dispositive distinction between the two cases. The New York case was brought by the United States Attorney General, pursuant to 42 U.S.C. § 15511, which permits the Attorney General—not private citizens—to bring a civil action against any state to carry out the requirements of HAVA §§ 301, 302, and 303. Here, Plaintiffs, as private citizens, have attempted to enforce certain provisions of HAVA, including § 303. The statute does not permit that. Accordingly, the New York case does not support Plaintiffs' effort to state a claim under HAVA.

### D. Constitutional Claims Under Local Election Laws

Plaintiffs' fundamental concern in their Amended Complaint and in their Opposition to the Motion to Dismiss is that Defendants violated *local* election laws—particularly Act 7334. Act 7334 (Bill No. 29-0047) was enacted by the Twenty-Ninth Legislature of the Virgin Islands during its 2011 Regular Session on December 28, 2011. Section 3a of Act 7334 provides that "only voting machines and equipment that are EAC-certified pursuant to The Help America Vote Act of 2002 . . . shall be utilized as the official voting systems or equipment" in the Virgin Islands (amending Act No. 5281, Bill No. 17-0100). In their Amended Complaint, Plaintiffs contend that the use of non-EAC certified voting machines in the primary and general elections, and other irregularities, violated the provisions of numerous local statutes. (Dkt. No. 33, ¶¶ 24, 32, 39, 46).

In order to bring a claim in federal court for violation of a local election statute, Plaintiffs must allege a constitutional violation that interferes with their right to vote. Violations of local election laws are properly litigated in state court unless a constitutional violation has been alleged. *See Shannon v. Jacobowitz*, 394 F.3d 90, 94, (2d Cir. 2005) ("Because the states traditionally have authority over their own elections and because the Constitution contemplates that authority, courts 'have long recognized that not every state election dispute implicates federal constitutional rights.'") (quoting *Burton v. Georgia*, 953 F.2d 1266, 1268 (11th Cir. 1992)); *Griffin v. Burns*, 570 F.2d 1065, 1076 (1st Cir. 1987) (opining that while the Constitution affords federal courts the power to intervene and invalidate local elections, only exceptional circumstances warrant the exercise of that power). Cases draw "[a] distinction . . . between 'garden variety' election irregularities and pervasive errors that undermine the integrity of the vote." *Bennett v. Yoshina*, 140 F.3d 1218, 1226 (9th Cir. 1998). "Garden variety election

irregularities do not generally violate the Due Process Clause, even if they control the outcome of the vote or election." *Id.* Only when election irregularities transcend garden variety problems is the election invalid. *Id. See also Hennings v. Grafton*, 523 F.2d 861, 864 (7th Cir. 1975) (finding "no constitutional violation where irregularities were caused by mechanical or human error and were not due to invidious or fraudulent intent," and ruling "[i]t is not every election irregularity, however, which will give rise to a constitutional claim and an action under section 1983. Mere violation of a state statute by an election official, for example, will not. *See Snowden v. Hughes*, 321 U.S. 1, 11 (1944)).").

Plaintiffs' allegation that the electronic voting machines were not EAC-certified, violating the provisions of Act 7334, which *may have* affected the entire election process, including the validity of vote tabulation, does not rise to the level of widespread fraud—fundamental unfairness—to state a claim for a constitutional violation, requiring decertification of the election. *See Bryan v. Todman*, 28 V.I. 42, 45, 1992 V.I. Lexis 19 (Terr. Ct. Dec. 17, 1992), *aff'd* 1993 U.S. Dist. Lexis 21461 (D.V.I. Oct. 29, 1993) (opining that an election should be invalidated where "there is a finding of fraud or deprivation of rights which would implicate the Constitution of the United States. . . Where irregularities are alleged, the burden of proof is on the plaintiff to show that the irregularities affect or change the result of the election by the questioned votes."). Plaintiffs have not alleged facts demonstrating that the alleged irregularities rose to a constitutional level that affected the outcome of the election. *Compare St. Thomas-St. John Bd. of Elections v. Daniel*, 2007 WL 4901116, at *21 (V.I. Sept. 17, 2007) (Swan, J., dissenting) (opining that where pervasive violations of Virgin Island election laws deprived voters of their ability to choose candidates of their choice, resulting in reasonable doubt that the election reflected the will of the voters, invalidation of the election would be a proper result); *see*

*also* analysis in January 6, 2013 Memorandum Opinion denying Motion for Preliminary Injunction, Dkt. No. 76 at 16 (discussing how allegations that Defendants violated other local laws did not reach constitutional dimensions); *supra*, n.2.

Plaintiffs' Amended Complaint does not contain sufficient factual matter, accepted as true, that states a claim to relief under local election law that is plausible on its face. *Iqbal,* 129 S. Ct. at 1949. Accordingly, Plaintiffs have failed to state a claim for a violation of a constitutional right that would permit their allegations that Defendants violated local election laws to be decided in federal court.

### E. The Voting Rights Act and the Military & Overseas Voter Empowerment Act

In their Amended Complaint, Plaintiffs make a passing reference to the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973j, which prohibits "any discrimination based on a potential voter's race, or on ethnic factors or minority language that diminishes an individual's voting rights." (Dkt. No. 33, ¶ 23). Plaintiffs also refer to "Defendants' deliberate and chronic failure to enforce the Uniformed and Overseas Citizens Absentee Voting Act (UOCAVA), as amended by the Military & Overseas Voter Empowerment (MOVE) Act, in spite of multiple opportunities to comply since November of 2009, resulted in an action by the United States to force compliance. *See United States of America v. The Territory of the Virgin Islands, et al*. Case No. 3:12-cv-0069." (Dkt. No. 33, ¶ 26). These "conclusory or 'bare-bones' allegations," which recite the statutory provisions of the Voting Rights Act and the UOCAVA, do not set forth any factual allegations to support the causes of action. *Fowler,* 578 F.3d at 210 (quoting *Iqbal*, 129 S. Ct. at 1949). The Court therefore dismisses these causes of action.

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss (Dkt. No. 84) is granted. An appropriate Order accompanies this Memorandum Opinion.

Date: March 7, 2013

_____/s/_____
RAYMOND L. FINCH
Senior District Court Judge